HENNEGAN et al. v. NONA MILLS CO. et al.
(No. 203.)

(Court of Civil Appeals of Texas. Beaumont.
May 23, 1917. Rehearing Denied
June 6, 1917.)

1. COURTS ⊙99(1) — DECISION OF HIGHER
COURT AS CONTROLLING.

Where the Supreme Court in an action of
trespass to try title has determined that a deed
was admissible and sufficient to show superior
title, such holding will be adopted by this court
in a later case between parties similarly situat-
ed where the identical deed is sought to be intro-
duced in evidence.

[Ed. Note.—For other cases, see Courts, Cent.
Dig. § 340.

2. TRESPASS TO TRY TITLE ⊙41(1) — CON-
TRACT OF DECEASED TO CONVEY—EVIDENCE.

In trespass by those claiming to
be heirs of a remote owner, recitals in deed by
the legal representatives of such owner together
with surrounding circumstances held sufficient
to support a court finding that owner before
his death executed and delivered a contract to
convey the land.

[Ed. Note.—For other cases, see Trespass to
Try Title, Cent. Dig. § 62.]

3. TRESPASS TO TRY TITLE ⊙47(1)—ACTION
AGAINST TRESPASSER—TITLE NECESSARY.

In trespass to try title against a naked tres-
passer, the owner of an undivided interest may
recover the entire tract.

[Ed. Note.—For other cases, see Trespass to
Try Title, Cent. Dig. § 69.]

Appeal from District Court, Liberty Coun-
ty; L. B. Hightower, Sr., Judge.

Trespass to try title by Elizabeth Hen-
negan and another against the Nona Mills
Company and others, in which defendants
brought a cross-action. Plaintiff took a non-
suit, but defended in the cross-action. From
part of the judgment for defendants in their
cross-action, plaintiffs appeal. Affirmed.

Maco & Minor Stewart and R. W. Horn, all
of Houston, for appellants. E. B. Pickett,
Jr., of Liberty, and Minor & Minor, of Beau-
mont, for appellees.

BROOKE, J. Elizabeth Hennegan and her
daughter, Cornelia Shaffer, sought to recover
the Philip Miller league, claiming to be the
widow and daughter of James M. Miller, who
was a son of Philip Miller, the original gran-
tee, and his wife, Lucinda Miller.

The proof showed, and the court below
found, there being no jury, that Elizabeth
Hennegan never was the wife of James M.
Miller, and that Cornelia was an illegitimate
child, which findings of the court are in no
way challenged by the appellants.

The plaintiffs thereupon took a nonsuit,
and the court rendered judgment for the de-
fendants upon their cross-action, for the de-
fendant Mrs. Camilla G. Davis for the land
claimed by her in the north half of the
league, and for the Nona Mills Company for
the 2,057 acres claimed by it in the south
half. The appellants abide by the judgment
below in favor of Mrs. Davis for the land
adjudged to her in the north half, but seek

to reverse the judgment in favor of the Nona
Mills Company for the 2,057 acres adjudged
to it in the south half of the league, on the
ground that a deed in the Nona Mills Com-
pany's chain of title, made by James Knight
and Lucinda Miller, who was the widow of
Philip Miller, the original grantee, as the
legal representatives of Philip Miller, deceas-
ed, to W. D. Smith for the south half of the
league, was void, and not a title-passing pa-
per, but admitting that, if that instrument
did pass title, the Nona Mills Company has
title to the 2,057 acres. The appellees are
Nona Mills Company and its warrantors, S.
W. Blount and Mrs. Itasca Blount, E. A.
Blount's widow, and sole devisee and inde-
pendent executrix.

The findings of fact and conclusions of law
filed by the court are as follows:

"Findings of Fact.

"(1) I found that Philip Miller and Lucinda
Coombs were married about the year 1827.

"(2) I find that in 1835 the league of land in
controversy in this suit was granted to Philip
Miller during his marriage with the said Lu-
cinda. He died in 1839.

"(3) I find that Philip Miller and his wife,
Lucinda, had several children, all of whom died
unmarried without issue, the three last of said
children being John J. Miller, who died about
1861, Benjamin Franklin, sometimes called
Frank Miller, who died in about the year 1862,
and James M. Miller, who died on or about
January 9, 1864.

"(4) I specially find that James M. Miller and
the plaintiff Elizabeth Hennegan were never
married and were never husband and wife, and
that the other plaintiff, Cornelia Shaffer, born
on April 1, 1864, was the illegitimate child of
the said James M. Miller and the said Elizabeth
Hennegan.

"(5) I find that about 1841 Lucinda, the wid-
ow of Philip Miller, after the death of her hus-
band, Philip Miller, married Thomas Cope, who
died in 1847, and afterwards, in about 1849, she
married one Brame, who died about 1852, and
that the said Mrs. Lucinda Brame died in 1867,
having had no child by her marriage with Brame,
and leaving surviving her only one child by her
marriage with Thomas Cope, that one child be-
ing Charles W. Cope, who was born February
18, 1847, and is living. She and Thomas Cope
had other children, but they died in infancy, or
when young children, and before her death.

"(6) That the records of Liberty county, in-
cluding the deed records and the records of the
probate court, and all other records of the coun-
ty, were destroyed by fire on or about December
12, 1874.

"(7) That prior to Philip Miller's death he
executed and delivered to William D. Smith a
contract to convey the south half of the Philip
Miller league upon the payment of a given con-
sideration.

"(8) That after Philip Miller's death his wid-
ow, Lucinda, and James Knight, as legal repre-
sentatives of Philip Miller, deceased, did con-
vey the said south half of said league to William
D. Smith and received from William D. Smith
$500 in pyament therefor, said deed of convey-
ance being acknowledged on September 1, 1840,
filed for record February 4, 1882, and now of
record in the Deed Records of Liberty County,
Tex., in Book F, page 197.

"(9) That William D. Smith by deed acknowl-
edged by him on January 1, 1861, conveyed the
same south half of the league to Noel G. Rob-
erts, filed for record February 4, 1882, of record

in Book F, page 199, of Liberty County Deed Records.

"(9a) In a case styled C. W. Cope v. E. A. Blount et al., No. 3690 on docket of district court of Liberty county, plaintiff, Chas. W. Cope, sued in trespass to try title to recover the entire south one-half of Philip Miller league, and on March 4, 1904, said court rendered judgment against him, and to the effect that plaintiff take nothing by his suit against the defendants E. A. Blount and F. W. Tucker.

"(10) That by written agreement it appears that the defendant Nona Mills Company has such title as Noel G. Roberts had to the 2057 acres in the south half of the league, particularly described in the answer of the defendant Nona Mills Company by mesne conveyances from and under Noel G. Roberts.

"(11) That the Nona Mills Company ever since their purchase of the 2,057 acres in question has assessed the same for taxation, paid the taxes thereon, had the land surveyed, and exercised other acts of ownership, said purchase having been made by the Nona Mills Company in 1906, from E. A. Blount and S. W. Blount.

"(12) That the said E. A. Blount and S. W. Blount for many years prior to 1906 had assessed said land for taxation, paid taxes thereon, and exercised other acts of ownership thereover, and claimed the same by mesne conveyances under Noel G. Roberts.

"(13) That Lucinda Miller never claimed any part of the south half of this league, though she lived until 1867 on the northern half of the league, and that up to the time of their death neither of the three surviving children of Philip and Lucinda ever claimed any interest in the south half of the league.

"(14) That Philip Miller and his wife, Lucinda Miller, made their home upon the league of land in question until his death in 1839, and after his death, and after she married, Thomas Cope, Lucinda, the widow of Philip Miller, continued to reside upon the said league, having in cultivation a farm thereon, a residence, and other home improvements, and also a pasture for stock, and that she continued to so use and cultivate the place each year continuously up until her death in 1867, and her son, C. W. Cope, lived with his mother at her said home upon this league, and after her death he continued to make use of same, and to cultivate the same farm, and continuously each year used and cultivated the said home place and farm until about December, 1890.

"(15) That in 1859 the widow of Philip Miller, who was then Mrs. Lucinda Brame, and her three sons, James M. Miller, Jno. J. Miller, and B. F. Miller, partitioned among themselves the north one-half of this Philip Miller league, and by this partition they divided said north one-half of the league among themselves as follows: To James M. Miller was allotted a tract of 160 acres, more or less, fronting on the Trinity river, and in the northwest corner of the league, and also a tract of 264½ acres, more or less, in the southeast corner of the league, and the field notes of these two tracts are shown by deed dated April 6, 1859, from Lucinda Brame, Jno. J. Miller and B. F. Miller to James M. Miller. To John J. Miller was allotted a tract of 191 acres, more or less, in the northern part of the league and just east of the said James M. Miller 160-acre tract, and also a tract of about 266 acres in the eastern part of the league. And to B. F. Miller was allotted a tract of 61 acres in the north part of this league just east of the said John J. Miller 191-acre tract, and also a labor of land in Hardin county, Tex., the land so allotted to said B. F. Miller being shown by deed dated April 6, 1859, from Lucinda Brame, Jno. J. Miller, and J. M. Miller. And to Mrs. Lucinda Brame there was allotted the old homestead tract of 200 acres and an additional tract adjoining same, making a total of 568 acres, which is situated in the southwest

part of the north one-half of said Miller league, being bounded on the north by the above-mentioned James M. Miller 160-tract, Jno. J. Miller 191-acre tract, and B. F. Miller 61-acre tract, and on the east by the Chas. Wilcox 640-acre tract out of this league, on the south by the line which divides this league into north and south halves, and on the west by Trinity river.

"(16) That, after the said partition among Mrs. Brame and her three sons, the said B. F. Miller conveyed to his mother, Mrs. Brame, the said 61-acre tract which had been allotted to him in said partition.

"(17) That during her lifetime Mrs. Brame regularly paid each year all taxes assessed against that part of the land in the north one-half of the Philip Miller league claimed by her, and that after the death her son, Chas. W. Cope, regularly paid each year all taxes assessed against that part of the land in the north one-half of said league claimed by him; that he so continued to pay such taxes up to and including the year 1890.

"(18) That on June 27, 1879, the old Miller home on said Miller league, it being then the home of Chas. W. Cope, was burned, and all tax receipts and other papers pertaining to this land which were then in his possession were burned in that fire.

"(19) That neither of the plaintiffs herein have ever paid any taxes on any part of this Philip Miller league.

"(20) That on May 16, 1873, Chas. W. Cope, by duly executed deed conveyed to Geo. W. Davis all his right, title, and interest in and to the headright league of land granted to Philip Miller on the 13th day of June, 1835, lying in said Liberty county, on the east bank of the Trinity river, 'save and except out of said league my homestead tract consisting of 629 acres (in two surveys of 568 and 61 acres) lying on the road leading from Liberty to Livingston, the interest hereby conveyed being estimated at 800 acres, more or less, and situated in the northeast corner of said league, and bounded on the west by 640 acres out of said league known as the Charles Wilcox tract, embracing the several shares or interest of Benjamin Miller, John J. Miller, James M. Miller, and my mother, Lucinda Brame, as heirs and distributees of my estate of said Philip Miller in the said headright league.' And this deed was filed for record first on July 21, 1873, and again on December 18, 1891, and is now of record in Volume J, page 504, Liberty County Deed Records.

"(21) That on the 27th day of October, 1890, Chas. W. Cope, by duly executed deed, conveyed to Geo. W. Davis 629 acres, more or less, of said Philip Miller league, described as follows: 'Six hundred and twenty-nine acres of land more or less, being part of that certain league titled to Philip Miller as a colonist on the 13th day of June, 1835, and being that part of said league conveyed to Lucinda Brame, and also including sixty-one acres conveyed to B. F. Miller, by the other heirs in the division of the estate of the said Philip Miller, deceased. [Here field notes are omitted.]' And this deed was filed for record on January 5, 1891, and is now of record in Volume J, page 277, Liberty County Deed Records.

"(22) That the said Geo. W. Davis died in the year 1898, and the defendant Mrs. Camilla G. Davis is his widow, and by his will, which has been duly probated, she was made his sole devisee and independent executrix.

### "Conclusions of Law.

"(1) I find that the league in question was the community property of Philip Miller and Lucinda, his wife.

"(2) That the deed made by Lucinda Miller and James Knight, as legal representatives of Philip Miller, deceased, conveyed the superior title to William D. Smith to the south half of the Philip Miller league land, and that the same

title passed by deed from William D. Smith to Noel G. Roberts, and that the title of Noel G. Roberts by mesne conveyances passed unto E. A. Blount and S. W. Blount and from them to the Nona Mills Company, as to the 2,057 acres described in the answer of the Nona Mills Company. All of the parties to the transaction evidenced by the deed from Lucinda Miller and James Knight, as legal representatives of Philip Miller, to William D. Smith, are dead. The deed is over 70 years old. All of the records of Liberty county have been burnt. Lucinda Miller and James Knight, making the recitals in their deed to William D. Smith, were acting in their official or representative capacity, and those recitals were against their interests. They received the $500 from William D. Smith. They were authorized to receive it and were liable therefor to the estate which they represented. They were in position to easily discover, and it was their duty to ascertain whether in fact Philip Miller had executed a contract with Smith. These facts and other facts and circumstances in evidence are sufficient to sustain the conclusions that Philip Miller had entered into a contract to convey the land to Smith, and that the purchase money was paid as recited, and it would be unreasonable to assume that the contrary was the fact.

"(3) I conclude, as a matter of law, that Elizabeth Hennegan was never married to James Miller, who was the surviving son of Philip Miller and Lucinda Miller, and that their relations were not those of husband and wife, and that the other plaintiff, Cornelia Shaffer, was not their legitimate child.

"(4) I conclude that on the death of John J. Miller in 1861 he left surviving him as his sole heirs Mrs. Lucinda Brame, his mother, B. F. or Frank Miller and James M. Miller, his brothers, and Chas. W. Cope, a half-brother, and that they inherited from said John J. Miller all the land owned by him in the Philip Miller league at the time of his death, and that on the death of said B. F. Miller, he left surviving him as his sole heirs, Mrs. Lucinda Brame, his mother, his brother, James M. Miller, and his half-brother, Chas. W. Cope, and the said sole heirs of B. F. Miller inherited all land in said Miller league owned by him at the time of his death, and on the death of said James M. Miller in 1864, he left surviving him as his sole heirs the said Mrs. Lucinda Brame, his mother, and his half-brother, Chas. W. Cope, and they inherited from said James M. Miller all land in said Philip Miller league which he owned at the time of his death, and on the death of the said Lucinda Brame in 1867, she left surviving her as her sole heir her son, Chas. W. Cope, and he inherited all land in the said Philip Miller league, which was owned by the said Mrs. Brame at the time of her death.

"(5) I conclude that by virtue of the two deeds made by Chas. W. Cope to Geo. W. Davis, one on May 16, 1873, and one on October 27, 1890, the said Davis acquired a fee-simple title to all lands in the Philip Miller league described in said two deeds, and that now his widow, Mrs. Camilla G. Davis, a defendant herein, is vested with fee-simple title to all those certain tracts of land in the north one-half of said Philip Miller league, which are described in her first amended original answer, filed in this cause, and being the same lands described in paragraphs 20 and 21 of the foregoing findings of fact.

"(6) And I conclude that the defendant Nona Mills Company, upon its cross-action, should have judgment against plaintiffs for the 2,057 acres out of the south half of the Philip Miller league particularly described in the answer of said defendant filed in this cause, and that the defendant Mrs. Camilla G. Davis upon her cross-action should have judgment against the plaintiffs for those certain tracts out of the north one-half of said Philip Miller league which are described in her first amended original answer filed in this cause."

The deed referred to is as follows:

"Republic of Texas, County of Liberty.

"Whereas, by a decree of the honorable probate court of the republic and county aforesaid, made on the 31st of August, A. D. 1840, by which the legal representatives of the estate of Philip Miller were authorized and empowered to make a title unto Wm. D. Smith to one-half league of land agreeably to the terms of a contract entered into by said Miller in his lifetime and said Smith:

"Now, therefore, know all men by these presents: That we, James Knight and Lucinda Miller, the legal representatives of the estate of Philip Miller, late of the republic and county aforesaid, deceased, by virtue of the authority aforesaid and in consideration of the sum of five hundred dollars to us in hand paid, the receipt of which is hereby acknowledged, have this day granted, bargained, sold, and by these presents do grant, bargain, sell, and convey, unto the said Wm. D. Smith, of the county of Jefferson, all that certain piece and parcel of land, the same being the south half of the league of land granted by his headright, lying and being situate in the county of Liberty, on the east side of the Trinity river, fronting upon said river, adjoining lands claimed by Prince Blenchet and Sam Houston, the said half commencing on the southwest corner of said Miller survey, on the east bank of the Trinity river: [Description of land here omitted.]

"To have and to hold the said bargained premises unto him, the said William D. Smith, and his heirs and assigns forever.

"And he, the said James Knight, and Lucinda Miller, legal representatives aforesaid, do covenant and agree to and with the said William D. Smith, his heirs, etc., to warrant and defend this sale against the successor of said P. Miller, his heirs, etc., or any person or persons claiming under him or them.

"In witness whereof we have hereunto set our hands and seal this 1st day of September.

    "James Knight,   [Seal]
       her
    "Lucinda X Miller,  [Seal]
       mark

"Legal Representatives of the Succession of P. Miller, Dec'd.

"In presence of Barclay Townsend,
      "A. W. Desmuke.

"Republic of Texas, County of Liberty.

"Be it remembered that before me, Geo. W. Miller, chief justice and ex officio a notary public in and for the county aforesaid, personally came and appeared James Knight and Lucinda Miller, to me known, who acknowledged that they signed, sealed, and delivered the foregoing deed of conveyance as legal representatives of the succession of Philip Miller, deceased, for the uses and purposes therein mentioned and set forth.

"To certify which I have hereunto set my hand and affixed my seal of office, at Liberty, this 1st day of September, A. D. 1840. Geo. W. Miles, Cyess and Ex Officio a Notary Public.

"Presented for record September 2, 1840. I. H. Griffin, R. Leprotm."

[1] The first assignment of error complains of the action of the court in permitting the introduction in evidence of the purported copy of the deed by the administrators of the estate of Philip Miller, deceased, to W. D. Smith of the south half of the Philip Miller league. The proposition under this assignment is:

"The administrator's deed, made under the decree of the probate court, in September, 1840, directing a specific performance of the contract by the intestate to convey to the grantee, is void

and inadmissible in evidence as a conveyance, because the probate court had no jurisdiction at that time to decree a specific performance of a contract by an intestate."

It is contended that without reference to the power of the probate court in 1840 to decree specific performance, the deed of September 1, 1840, from James Knight and Lucinda (widow of Philip Miller, deceased), as legal representatives of Philip Miller, deceased, to William D. Smith, taken in connection with all the other circumstances, was admissible in evidence and is amply sufficient to sustain the conclusion that Philip Miller had entered into a contract with Smith; that the purchase money was paid by Smith to and received by Miller's legal representatives, whereupon the title to the land, superior to any title remaining in the Miller estate, was vested in Smith, even independent of any deed. And it is also claimed that in the case of Cope v. Blount, 99 Tex. 431, 90 S. W. 868, the admissibility in evidence and the title passing character of this very deed was affirmed by the Court of Civil Appeals, and on certified questions by the Supreme Court, and by the Court of Civil Appeals again on motion for rehearing, and by the Supreme Court again by the refusal of a writ of error. The latter contention seems to be correct.

In the case of Cope v. Blount, 38 Tex. Civ. App. 519, 91 S. W. 617, the court uses the following language:

"At the last term of this court we affirmed the judgment of the court below in this case, on the ground that the execution by Mrs. Miller of the deed to Wm. D. Smith estopped her and those claiming under her from asserting title to the land against the appellees who claim under said deed. Appellant having filed this motion for a rehearing, we certified to the Supreme Court the question of whether, upon the facts stated, appellant was estopped to assert title to the land. This question was answered in the affirmative in an opinion recently delivered by the Supreme Court. Vide Cope v. Blount [99 Tex. 431] 90 S. W. 868, 14 Tex. Ct. Rep. 636. It is claimed in the motion for rehearing that the fact stated in our former opinion that appellant was only claiming as heir of Mrs. Miller is not supported by the record, but that the record shows that he is the sole heir of Philip Miller as well as of Mrs. Miller, and there being no evidence showing that the land, or any part of it, was community property, or that Mrs. Miller had any separate interest therein, the judgment of the court below should not be affirmed. * * * The deed from James Knight and Mrs. Miller recites that Philip Miller had in his lifetime contracted to convey the land to Wm. D. Smith, and that Smith had paid the grantors, as legal representatives of Philip Miller, the purchase money due under said contract. If these facts are true, the superior title to all of the land became vested in Smith.

"The Supreme Court, in the opinion before referred to, say that Mrs. Miller and those who claim under her are estopped from denying the truth of these recitals, and that, the contract therein recited being binding upon her to the extent of her interest in the land, her deed passed the legal title to said interest to Smith. These recitals are not binding as an estoppel against the heirs of Philip Miller, but they are admissible in evidence as circumstances tending to show the existence of the contract between Philip Miller and Smith and the payment of purchase money by the latter, which, taken in connection with the other facts shown, are sufficient to sustain the conclusion that Philip Miller had entered into a contract to convey the land to Smith, and that the purchase money had been paid as recited. All of the parties to the transaction are dead, and the records of the county have been burned. The deed is over 60 years old, its genuineness is not questioned, and the grantors who make the recitals were essaying to act in their official or representative capacity, and such recitals were against their interests. They were authorized to receive this money, and would be held liable therefor to the estate which they represented. They were also in position to easily discover, and it was their duty to ascertain, whether the contract with Smith had been executed. Under these circumstances, it would be unreasonable to presume that their statements are false. In addition to this, it is shown that Mrs. Miller lived for a number of years after the execution of said deed, that appellant has known of the existence of the deed for 40 years, and that neither he, Mrs. Miller, nor any one claiming under Philip Miller has ever asserted any claim to the land prior to the institution of this suit. On the contrary, it is shown that Smith and those claiming under him have continuously asserted claim to the land ever since the execution of said deed. There were several transfers before the conveyance to appellees, who have held it and paid taxes thereon for a number of years."

There is a further proposition, upon which reliance seems to be based, that the recitals in the said administrator's deed were not admissible in evidence to prove title or the contract therein recited by the intestate to convey, on the payment of consideration, because they were hearsay as to appellants, who were not parties or privies thereto, and not affected thereby.

It is apparent to this court that the identical deed, together with all the circumstances surrounding it, has been determined by the Supreme Court of this state to be sufficient to vest the superior title to this land in Wm. D. Smith. We are acquainted with the authorities cited by the appellant, and, without going over the same in detail, will say that we cannot believe there is merit in this assignment, and that the same should be overruled.

The second assignment of error is submitted as a proposition, and is as follows:

"The court erred in concluding, in his conclusions of law, that the deed by Lucinda Miller and James Knight, as legal representatives of Philip Miller, deceased, conveyed the superior title to W. D. Smith to the south half of the Philip Miller league."

[2] The third assignment challenges the action of the court in its finding of fact No. 7, in finding that prior to Philip Miller's death he executed and delivered to Wm. D. Smith a contract to convey the south half of the Philip Miller league, upon the payment of a given consideration, because such finding is not supported by the evidence.

It is contended that the only evidence that Philip Miller executed a contract to convey, prior to his death, is the recitals in the administrator's deed, and that the recitals were not admissible, because they were hearsay, because they are only conclusions or infer-

ences, and for the further reason that they are not the best evidence.

We are constrained to believe that there is no merit in the contention of the appellants under these assignments, and the finding of the court that prior to Philip Miller's death he executed and delivered to Wm. D. Smith a contract to convey is sustained by reason of all the circumstances surrounding the transaction, and from the proper inferences to be drawn from the recitation itself. Being of the opinion, therefore, that there is no merit in these assignments, they are in all things overruled.

The fourth, fifth, and sixth assignments of error are as follows:

(a) "The court erred in finding 'that after Philip Miller's death his widow, Lucinda Miller, and James Knight, as legal representatives of Philip Miller, deceased, did convey the said south half of said league to William D. Smith and received from William D. Smith $500 in payment therefor,' because the same is not supported by the evidence, and is contrary thereto."

(b) "The court erred in concluding, as a matter of law, that the facts and circumstances in evidence were sufficient to sustain the conclusions that Philip Miller had entered into a contract to convey the land to Smith and that the purchase money was paid as recited."

(c) "The court erred in holding that the evidence showed a contract in writing by Philip Miller, wherein he agreed to convey the south one-half of the league to William D. Smith in consideration of $500 to be paid, and that the said $500 was afterwards paid by Smith."

As before stated, we are of opinion that the facts and circumstances in evidence sustain the court's findings and conclusions; that after Philip Miller's death, his widow, Lucinda Miller, and James Knight, as legal representatives of Philip Miller, deceased, did convey the south half of said league to Wm. D. Smith, and received from Wm. D. Smith $500 in payment therefor, and we are of opinion that the facts and circumstances in evidence are sufficient to support the conclusion that Philip Miller had entered into a contract to convey the land to Smith, and that the purchase money was received, and that is the reasonable inference, and that a contrary assumption would be unreasonable. Therefore we find no merit in the assignments, and the same are overruled.

The eighth and ninth assignments of error are as follows:

(a) "The court erred in finding 'that the said E. A. Blount and S. W. Blount, for many years prior to 1906, had assessed said land for taxation, paid taxes thereon, and exercised other acts of ownership thereover, and claimed the same by mesne conveyance under Noel G. Roberts,' because the same is not supported by the evidence, but is contrary thereto."

(b) "The court erred in finding 'that Lucinda Miller never claimed any part of the south half of this league, though she lived until 1867 on the north half of the league up to the time of her death, and neither of the three surviving children of Philip Miller and Lucinda Miller ever claimed any interest in the south half of the league,' because same was not supported by the evidence and is contrary thereto."

The title of the Nona Mills Company, in so far as dependent on the deed made by Lucinda Miller and Knight, is as follows:

(1) The grant to Philip Miller of the league on July 15, 1835.

(2) The marriage of Philip Miller to Lucinda about 1827, and his death in 1839, as found by the court in findings of fact Nos. 1 and 2, and as shown by the undisputed testimony of Chas. W. Cope, a son of Lucinda Miller by her second husband, Thomas Cope.

(3) Deed from James Knight and Lucinda Miller, as the legal representatives of Philip Miller, deceased, in 1840, to W. D. Smith for the south half of the league, of record in Liberty county ever since 1840, except for a period of eight years following the burning of all the records of that county in 1874.

(4) The deed for the south half by W. D. Smith to Noel G. Roberts in 1861.

(5) The written agreement that the Nona Mills Company has such title as Noel G. Roberts had to the 2,057 acres claimed by the Nona Mills Company.

However, we are of the opinion, at the outside, and to say nothing of the deed made by James Knight and Lucinda Miller, as the legal representatives of Philip Miller, and without reference to the contract between Philip Miller and W. D. Smith, and without regard to the recitals in that deed, as to whether Smith did or did not pay the $500 to the legal representatives of Philip Miller, the action of the court was correct in coming to the conclusion that the appellee had the title, for the reason that the appellants in this case came in as defendants in the cross-action of the appellees, and therefore, in the opinion of this court, the appellants are mere trespassers, and the title of the Nona Mills Company is good, and they are entitled to recover thereon, for the following reasons:

First. The appellants, when they took their nonsuit, in effect abandoned the contention made by their evidence that Mrs. Hennegan was the widow and Mrs. Shaffer the legitimate child of James M. Miller, the last surviving child of Lucinda and Philip Miller. The finding of the lower court was:

"I specially find that James M. Miller and plaintiff Elizabeth Hennegan were never married and were never husband and wife, and that the other plaintiff, Cornelia Shaffer, born in April, 1864, was the illegitimate child of the said James M. Miller and the said Elizabeth Hennegan."

Second. In this aspect of the case, discarding the deed to Wm. D. Smith and Smith's deed to Noel G. Roberts, the title of the Nona Mills Company would be and is:

(1) The marriage of Philip Miller to Lucinda in 1827.

(2) The grant to Philip Miller in 1835.

(3) Philip Miller's death in 1839, leaving surviving him his widow, Lucinda, all of his children dying unmarried and without issue, the last three dying in 1861, 1862, and 1864, respectively, leaving their mother surviving

them. So, the league being community, Lucinda, on Philip's death, had an undivided half, and, on the death of the three children by her marriage with Philip Miller, she inherited one half of their interests, the other half of their interests passing to their half-brother, Chas. W. Cope.

(4) In 1841 Lucinda Miller married Thos. Cope, by whom she had one child, C. W. Cope, surviving her when she died in 1867. So Thos. Cope inherited the league from his mother, Lucinda, and from his Miller brothers.

(5) "In a case styled C. W. Cope v. E. A. Blount et al., No. 3690 on docket of district court of Liberty county, plaintiff, Chas. W. Cope, sued in trespass to try title to recover the entire south one-half of the Philip Miller league, and on March 4, 1904, said court rendered judgment against him to the effect that plaintiff take nothing against the defendants E. A. Blount and F. W. Tucker." This judgment was affirmed by the Court of Appeals in 38 Tex. Civ. App. 516, 91 S. W. 615. This judgment vested undivided interests in the south half in E. A. Blount and F. W. Tucker.

(6) In 1906 E. A. Blount conveyed by two deeds two undivided interests in the south half of the league to the Nona Mills Company, being all of the undivided interest of 2,057 acres claimed by the Nona Mills Company, except the undivided interest of 365 acres conveyed to it by S. W. Blount in 1906.

[3] It is unnecessary to cite authorities to show that as against a naked trespasser, the owner of an undivided interest may recover the entire tract. So we may say that the judgment in Cope v. Blount et al. in favor of E. A. Blount for an undivided interest in the south half and the purchase from him by the Nona Mills Company of those interests would entitle them to the full recovery of the entire undivided 2,057 acres, without reference to the interest conveyed by S. W. Blount of an undivided 365 acres to the Nona Mills Company.

In addition to what has been said above, it is found by the court, in its twelfth finding of fact, that the said E. A. Blount and S. W. Blount for many years prior to 1906 had assessed said land for taxation, paid taxes thereon, and exercised other acts of ownership thereover and claimed the same by mesne conveyances under Noel G. Roberts. We think this finding of the court was supported by the evidence.

The court, in its thirteenth finding of fact, found that Lucinda Miller never claimed any part of the south half of the league, though she lived until 1867 on the northern half of the league, and that up to the time of their death neither of the three surviving children of Philip and Lucinda ever claimed any interest in the south half of the league. We believe this finding is supported by the evidence.

In its fifteenth finding of fact the court found that in 1859 Lucinda and her three Miller sons partitioned amongst themselves the north half of the league, on which her homestead was, and in its seventeenth finding that Lucinda, till her death in 1867, and her son, Chas. W. Cope, till 1890, assessed and paid taxes only on land in the north half; in the nineteenth that neither of the plaintiffs have ever paid any taxes on any part of the Philip Miller league: and the twentieth and twenty-first findings are that Chas. W. Cope never conveyed any land except in the north half of the league. These findings of the court are based upon testimony, and we are unable to say that they are not correct. We have gone over the record carefully, and examined the assignments in the light of the opinions of the Court of Civil Appeals and Supreme Court heretofore rendered. We have concluded that the conclusions of law arrived at by the lower court were sound, and that there was no error in the same.

Believing, as we do, that the appellants have had a fair and impartial trial, and that their rights have been guarded in the trial had in the district court, and finding no error in the action of said court, the judgment herein is in all things affirmed.