L. W. ALEXANDER V. JOHN W. GILLIAM.

1. Prior occupancy will enable a party to maintain the action of trespass to try title against a wrong-doer.
2. One tenant in common can maintain an action of trespass to try title.
3. It would seem that a tenant in common suing should allege the nature of his title ; but *held*, that possession by deed, by metes and bounds, from one tenant in common, and not disputed by any of the co-tenants, is, as against a mere trespasser, sufficient title under an allegation of ownership.

APPEAL from Fayette.    Tried below before the Hon.
I. B. McFarland.

At the Fall term, 1868, of the Fayette District Court,
John W. Gilliam brought trespass to try title against
L. W. Alexander for the recovery of 277½ acres of land
in that county, and alleged to be part of five leagues of
land granted to Henry Austin by the Mexican govern-
ment.    Gilliam claimed the 277½ acres by virtue of a deed
from Henry Austin, Jr., dated April 18, 1866, and alleged
in his petition that he "held by a regular chain of trans-
fer from the original grantee, Henry Austin;" that "said
L. W. Alexander, defendant, has made divers trespasses
on said land, and is now in the illegal possession of same
under some false and fraudulent claim, of the exact nature
of which your petitioner is not advised, and withholds
possession of same from your petitioner," etc.    The peti-
tion was endorsed, "this suit is for trespass to try title, as
well as for damages."

In an amended petition (June 7, 1869) Gilliam made
the original field notes of the survey of 277½ acres con-
veyed to him by Henry Austin a part of his petition, as
an "exhibit," and alleged that this survey was made by
Alexander, the defendant, and that the conveyance to
him by Austin was made according to the field notes con-
tained in that "exhibit."

Alexander plead "not guilty," and a general denial.

Plaintiff proved the grant to Henry Austin ; that Henry
Austin, Jr., was a son of the grantee, who left two daugh-
ters and another son ; the deed from Henry Austin, Jr.,
to plaintiff, for the land described in the petition ; that
the deed to him was made from field notes made by the
defendant, Alexander, as surveyor ; that plaintiff had
been in possession of the tract so deeded to him ; the lo-
cation, by reputation in the neighborhood and by sub-
sequent surveys of the west boundary of the Austin five-

league grant; and that defendant was notified by plaintiff not to build within his lines.

Defendant sought to show that the west line of the Austin grant was further east, and that he had located a certificate between the west line as claimed by him and as claimed by plaintiff, and that his improvements were situate on such vacancy.

The judge submitted to the jury the location of the west line of the Austin grant, as follows :

"This is an action of trespass to try title, and the defendant pleads not guilty. The defendant does not attempt, by evidence or otherwise, to show any outstanding title in himself. If, therefore, you believe, from the evidence, that the plaintiff was in actual possession at and before the entry of defendant, and that he entered with the knowledge of that fact, and that the plaintiff's possession has been continuous, then, for the purposes of this suit, the title of the plaintiff is to be regarded as perfect to the land embraced in the field notes contained in the deed from Henry Austin to the plaintiff. The defense relied on, however, is, that the land in controversy is not included in the Austin survey, and therefore not within the bounds of the tract conveyed by Henry Austin to the plaintiff; and this presents to the jury the single question of the true location of the western boundary line of the Henry Austin five-league grant. If the land in controversy is included within the Austin survey, then the plaintiff is entitled to recover. If it is not included within the Austin survey, then he cannot recover.

"The jury will, therefore, determine from the evidence where the true western boundary line of the Austin survey is situated, according to the field notes set out in the grant from the government of Coahuila and Texas, and, if possible, they will ascertain the line actually run and marked by the surveyor as the western boundary line of

said Austin survey.   If you should believe from the evidence that the surveyor Borden, after having surveyed and run a line as the western boundary of said Austin survey, abandoned said line and actually run another line for the western boundary line of the said Austin survey, then it will be your duty to ascertain said line by the field notes set out in the grant to Austin, according to the following rules:

" *First.* A call for natural objects governs and controls all other calls.

" *Second.* A call for artificial objects controls course and distance, and in this connection common fame or common reputation in the neighborhood as to the locality of the line before the commencement of the controversy is admissible in evidence; so the lines of adjoining surveys, though subsequently made, which call for this line, may be referred to, not as proof of the line in controversy, but as evidence of what was commonly received and recognized in the community at that time as the established line.

" *Third.* Should you be unable to determine the true locality of the line by any of the forgoing rules, then it must be determined by course and distance, as set out in the field notes contained in the grant to Henry Austin.

"The jury will indicate by their verdict which line they believe, from the evidence, forms the true western boundary line of the Austin survey; and if the improvements of the defendant are included within its limits, you will find for the plaintiff, and at the same time find such damages as you may believe the evidence shows the rent to be reasonably worth from the time of entry of the defendant to the present time.

"If you believe from the evidence the improvements of the defendant are not included within the Austin survey, you will find for the defendant."

The jury found a verdict as follows :

"We, the jury, find for the plaintiff, and believe the line long admitted and established in the community should be regarded as the true western boundary line of the Austin survey. We find the improvements of the defendant, Alexander, inclosed within its limits, and assess the damages at $50 annually from the time of filing suit by plaintiff to the present time."

Judgment was rendered, and on appeal by defendant, Alexander, many errors were assigned, the court only discussing the two subjects, touching the title of plaintiff as received from a tenant in common, and prior actual possession of the whole tract.

*Timmons & Brown*, for appellant, insisted that Gilliam's title as tenant in common was not sufficiently alleged.

Not a word is said of co-tenancy in Gilliam's pleadings; and not having alleged it, he should not have been allowed to make any attempt at proving it. Our Supreme Court has held that a tenant in common can maintain the action of trespass to try title; but an examination of the cases will show that the tenancy in common was set up in the pleadings. (Croft v. Rains, 10 Texas, 520 ; Watrous v. McGrew, 16 Texas, 506; Grassmeyer v. Beson, 18 Texas, 753.) Therefore we think the charge given exceedingly erroneous, when there is neither allegation nor proof of title by tenancy in common. (Cromwell v. Holiday, Austin Term, 10th of April, 1871, by Mr. Justice Walker.)

The charges of the court are criticised as in conflict with the law as given in Bartlett v. Hubert, 21 Texas, 8.

The plea of "not guilty" put the plaintiff upon proof of his title. (28 Texas, 671, Stroud v. Springfield ; 35 Texas, 82, Hooper v. Hall ; 34 Texas, 114, Sullivan v.

Dimmitt; 32 Texas, 125, Kinney v. Vinson; 6 Texas, 291, Hughes v. Lane; 9 Texas, 459, Harlan's Heirs v. Haynie.)

*Moore & Ledbetter*, for appellee.—I. "Where the plaintiff shows priority of possession, and no title is found in the defendant, the plaintiff, by virtue of his possession merely, shall have judgment." (Wilson v. Parker, 18 Texas, 595.) This case was an action of trespass to try title, and in it Chief Justice Hemphill uses the above quoted language. (Also, 18 Texas, 231; 10 Texas, 139, Lea v. Hernandez; 3 Johns. R., 283; 2 Black., 197; 2 Saunders, 111; 2 Johns., 22; 4 Johns, 202; 4 Cowen, 602 ; Jackson v. Boston, 1 Cush., 375 ; Doe v. Read, 8 East, 556 ; 1 Moody & M., 346 ; 2 Johns., 438 ; 15 Wend., 171; Cateris v. Cowper, 4 Taunt., 548 ; 1 East, 246 ; Christy v. Scott, 14 How., 292 ; 20 Curtis, 185.)

In this last case, which went up from this State, and was an action of trespass to try title, the Supreme Court say:

"But a mere intruder cannot enter on a person actually seized and eject him, and then question his title or set up an outstanding title in another. The maxim that the plaintiff must recover on the strength of his own title, and not on the weakness of the defendant, is applicable to all actions for the recovery of property; but if the plaintiff had actual prior possession of the land, this is title strong enough to enable him to recover it from a mere trespasser who entered without title." We cite also Davis v. Loftin, 6 Texas, 497 ; Linard v. Crossland, 10 Texas, 464.

These cases fully establish the proposition : Prior occupancy is sufficient title in action of trespass to try title against one claiming no title, with full notice both of possession and claim of title—*a fortiori* against the appellee,

who actually surveyed the land for plaintiff. Not a single opposing opinion can be found in our reports to this proposition.

The authorities cited by appellant's counsel are not applicable to the facts of this case, for in neither of these cases cited by them was the plaintiff in prior possession seeking to dispossess a subsequent possessor without title, as in the case at bar.

II. A tenant in common can maintain an action of trespass to try title, not only against those without claim, but who claim title. (Croft v. Rains, 10 Texas, 523; Grassmeyer v. Beson, 18 Texas, 767 ; Watrous v. McGrew, 16 Texas, 511.) It cannot be contended that Gilliam, at least, was not a tenant in common with the other children of Henry Austin, deceased.

Gilliam's deed is from his son Henry. No one was shown to oppose or claim adverse to Henry Austin, Jr.

III. The appellant (defendant below) seeks to protect himself by showing Gilliam claims lands not embraced in his deed. Under the authorities cited above this is quite immaterial, as Gilliam was in possession. The cloud of witnesses who testify show this, and that they do not complain. They say this western line comes to all these adjoining surveys ; for all time past this has been the common recognition. (Floyd v. Rice, 28 Texas, 341; Stroud v. Springfield, 28 Texas, 669; 6 Peters, 341; 1 Hawks, 45; 1 Hawks, 116; 3 Haur., 282.)

In Stroud v. Springfield, 28 Texas, 669, our Supreme Court say :  "The rule that old boundaries may be proved by common reputation and understanding of the neighborhood where the land lies would seem better established and stand in principle on higher ground than the one we have been considering, which admits the declarations of deceased persons, of competent knowledge, and having no interest, as evidence."

Opinion of the Court.

WALKER, J.—This is an action of trespass to try title. It might have been more properly brought as an action of forcible entry and detainer. The land in controversy embraces about two hundred and seventy-seven or two hundred and eighty acres, situated in Fayette county. Gilliam, the appellee, as plaintiff below, claims the land under a deed from Henry Austin, Jr., one of the children and heirs of Henry Austin, Sr.

The appellant, it is proved, surveyed the land for the appellee, and must have known, before the commencement of this suit, that Gilliam claimed the land under his deed from Austin. Alexander sets up no title in himself; the evidence places him in the position of a trespasser seeking to oust Gilliam, the prior occupant and possessor. It certainly requires some boldness on the part of the appellant, when he appeals to a court of last resort, urging no title, and setting up none in himself, but simply insisting that the District Court has committed errors in establishing the rights of the appellee.

For the proper disposition of this case, we regard it as wholly immaterial whether the district judge erred or not in admitting evidence or ruling out evidence.

Such facts are established beyond all controversy as enable us to determine that the law of the case is with the appellee. He was in possession of the land, claiming it under his deed from Henry Austin, before the appellant entered upon it. The appellant had no title, and this no one knew better than himself. He must have known, and did know, that he was only a trespasser. But he appears to have been obstinately determined, and his appeal to this court shows that he still is, to dispossess one who had an older possessory right, if not a better one.

The position of the parties thus circumstanced and situated, when viewed in the light of the law, is this:

"Where the plaintiff shows priority of possession, and no title is proved in the defendant, the plaintiff, by virtue of his possession merely, shall have judgment."

Chief Justice Hemphill, in deciding the case of Wilson v. Palmer, 18 Texas, 595, further remarks: "It appears now to be a well established principle, though once doubted, that a prior occupancy is a sufficient title against a wrong-doer." He cites 9 Texas, 139; 2 Black., 197; 2 Saunders, 111; 2 Johnson, 22; 4 Johnson, 202; 7 Cowen, 602.

We have examined the authorities referred to by appellee's counsel, and find them aptly cited, and bearing strongly upon this case. The same doctrine is again stated in Kolb v. Bankhead, 18 Texas, 231, *et seq.;* Jackson v. Boston, 1 Cush., 375; Doe v. Read, 8 East, 356; 1 M. & N., 346; 15 Wend., 171; Cateris v. Cowper, 4 Taunt.; Christy v. Scott, 14 Howard, 292.

This was a case from this State, and the doctrine herein laid down is that a mere trespasser or intruder cannot enter upon lands in the possession of another and eject him therefrom, and then question his title, or set up an outstanding title in another.

The courts say the maxim that the plaintiff must recover on the strength of his own title, and not on the weakness of the defendant, is applicable to all actions for the recovery of property. But if the plaintiff had actual prior possession of the land, this is title strong enough to enable him to recover from a mere trespasser, without title.

The doctrine is too well established in this State and elsewhere now to be doubted, that prior occupancy will enable a party to maintain the action of trespass to try title against a wrong-doer who has no title in himself.

The appellee appears to have maintained his title to the land in controversy upon the strength of his title coming.

from the Mexican government, through Henry Austin, Sr., and Henry Austin, Jr. Admitting that he was only a tenant in common, having succeeded to Henry's share, with the other children and heirs of Henry Austin, Sr., he might maintain the action of trespass to try title. (See Croft v. Rains, 10 Texas, 523; Grassmeyer v. Beson, 18 Texas, 767; Watrous v. McGrew, 16 Texas, 511.) It is strongly urged, and the argument would be very forcible in a proper case, that the proofs introduced by the plaintiff below did not correspond with the allegations of the pleadings; and it is true that the plaintiff below set up title in himself as sole tenant to the land in controversy; and we are unable to see wherein this allegation is not supported by the evidence; at least so far none of the heirs or assigns of Henry Austin, Sr., dispute this proposition, and the appellant has not placed himself in a position to do so.

The brief and argument of appellant's counsel is able and ingenious; they have left no stone unturned in the interest of their client; but we cannot adopt their theory of the case; and for the reasons given we affirm the judgment of the District court.

Affirmed.

Rehearing was granted July 23, 1872. April 14, 1873, former judgment adhered to—no opinion delivered.