**WAGERS v. SWILLEY et al.**

No. 12049.

Court of Civil Appeals of Texas. Galveston.

May 5, 1949.

Rehearing Denied May 26, 1949.

W. J. Knight, Houston, for appellant.

Hamblen, Bobbitt & Hamblen, Houston, W. P. Hamblen, Jr., Houston, for appellees.

CODY, Justice.

This is an action in trespass to try title to 235.36 acres of land out of the western end of lots 4, 5, 6, 7 and 8 of the Young Subdivision of the Victor Blanco Five League Grant in Harris County. It was originally brought April 12, 1946, by W. S. Swilley, joined by his wife and three daughters against W. H. Wagers. Two of the daughters were married, and their husbands were also parties plaintiff. W. S. Swilley died testate in the following September, naming his wife, Louise Swilley, as independent executrix. Mrs. Swilley duly qualified, and in addition to continuing to prosecute the suit in her individual capacity, also prosecuted same as independent executrix.

In the petition upon which they went to trial, in addition to pleading the action of trespass to try title in statutory form, plaintiffs also pled the three, five, ten and twenty-five year statutes of limitations. In response to defendant's demand, plaintiffs filed their abstract of title. Defendant's answer consisted of a plea of not guilty, and a plea of the ten year statute of limitations.

Plaintiffs' abstract of title is unusual in this respect; it contained, among other things, the proceedings in a case in which the judgment rendered therein found as a fact there existed a missing deed which had transferred the property here involved from a record owner, Lorenzo De Zavallo, Jr., to the next succeeding predecessor in their chain of title. Plaintiffs' chain of title is as follows:

First: I. The patent to the Five League Grant from the State of Coahiula and Texas to Victor Blanco, dated June 1, 1831.

II. A recorded English translation of the Spanish deed from the patentee to Lorenzo De Zavallo, Sr., dated November 27, 1833.

III. Deed from Lorenzo De Zavallo and wife, Emily, to Lorenzo De Zavallo, Jr., dated September 8, 1835, conveying the lower or south three leagues out of the Victor Blanco.

IV. Deed from Lorenzo De Zavallo, Jr., acting through his attorney in fact, J. O. Davis, conveying the lower three leagues to H. Masterson, dated January 7, 1903.

V. There were various other conveyances to H. Masterson of portions of interest in the Young Subdivision of the Victor Blanco from some of the Young heirs.

Second: A. A conveyance from Emily Hand and her husband to George Young, dated January 5, 1854, conveying 2000 acres out of the lower three leagues of the Victor Blanco.

B. A partition deed between the heirs of George Young, dated June 20, 1865, which partitioned the 2000 acres conveyed to George Young by Emily Hand and husband. The widow of George Young got the bottom or southern most share, which consisted of a strip of land 600 varas wide, and which was also bounded by the east and west lines of the Victor Blanco. This share was not numbered in the partition, and is not involved in this suit. The remainder of the 2000 acres was divided into eight lots, each being 222.5 varas wide, and bounded by the east and west lines of the Victor Blanco, and was partitioned off to the eight surviving children of George Young. The lots were numbered from south to north.

Third: H. Masterson brought suit in trespass to try title against certain of the Young heirs and their successors in interest. It was established in that suit that the Emily Hand who, with her husband, had conveyed the 2000 acres to George Young, was the widow of Lorenzo De Zavallo, Sr., and the mother of Lorenzo De Zavallo, Jr. The question submitted to the jury in that case was "Do you or do you not find from all the facts and circumstances, guided by the law given you concerning the presumption of a deed, that there was at some time a deed made to the 2000 acres of the Victor Blanco Grant by Lorenzo De Zavallo, Jr., to Emily Hand?" The jury found that such a conveyance was so made. The court thereupon rendered judgment that H. Masterson take nothing as against the defendants who were holding title under the Young heirs; but rendered judgment for H. Masterson with respect to the land he held under the Young heirs, and with respect to disclaimers that had been filed, etc. Upon appeal, the judgment was affirmed, and the supreme court refused an application for writ of error. Masterson v. Harrington et al., Tex.Civ.App., 145 S.W. 626.

Fourth: By mesne conveyances W. S. Swilley acquired the title awarded both to Masterson and to the Young heirs in the Masterson-Harrington case. The successors in interest to the Young heirs who received Lot 8 in the partition were not parties to the suit. W. S. Swilley's immediate predecessor in title, that is, his grantor, was B. N. Garrett. The date of said deed was February 1, 1933.—Plaintiffs state in their brief that the entire interest which was partitioned among the Young heirs, so far as the land here involved is concerned, was conveyed to W. S. Swilley by the said B. N. Garrett deed. However, the Young heirs appear to have been quite prolific. And, since defendant occupies the status of a naked trespasser in this suit, we have not felt constrained to decide whether or not there might be some fractional interests in some of the lots outstanding in some of the Young heirs.

By deed dated October 17, 1935, W. S. Swilley and wife purported to convey an undivided one-fifth interest to each of their aforesaid three daughters in various tracts of land, including approximately four thousand acres in the Victor Blanco; but the description of the land, so far as it was intended to cover land located in the Victor Blanco, was doubtless fatally defective, so that no interest in the land located in the Victor Blanco was divested out of the grantors.

The defendant excepted to the court's charge in certain respects, and requested the submission of certain special issues which were refused. The court then submitted the case to the jury upon five special

issues. The jury found for plaintiffs on the special issue with respect to the five year statute of limitations; and found for plaintiffs on the two special issues relating to the three year statute of limitations (the court submitting the issue with reference to two different three year periods).—The jury found against defendant upon his issue as to ten year adverse possession.

The defendant moved to set aside the jury's verdict because of plaintiffs' counsel's argument to the jury. He also moved for judgment notwithstanding the verdict; and seasonably filed his motion for new trial.

The court rendered judgment for plaintiffs upon his finding that they had proved good record title, and also rendered judgment for plaintiffs upon the verdict under the five year and three year statutes of limitations.

Defendant predicates his appeal upon twenty points, which cover four pages in his brief, and so cannot be here set forth. However, these points are disposed of by what is said hereinafter.

We hold that no issue was made out by plaintiffs under the three year statute of limitations. Title and color of title as used in that statute, necessarily means something less than the paramount title. Burnham v. Hardy Oil Co., 108 Tex. 555, 562, 195 S.W. 1139. Plaintiffs do not pretend to connect their chain of title in an unbroken chain with the sovereignty of the soil except through Victor Blanco, the patentee. That is to say, they claim to hold their interest by the true or paramount title, and do not claim to hold any junior or defective title.

As stated above, the abstract of title filed by plaintiffs contained the proceedings in the Masterson-Harrington case. The judgment in that case established that Emily Hand was, with respect to the 2000 acres which were partitioned among the Young heirs, the vendee of Lorenzo De Zavallo, Jr. In that suit it was decided that Lorenzo De Zavallo, Jr., had conveyed the title to the 2000 acres to his mother, who had conveyed to George Young, before he conveyed his title to the lower three leagues to H. Masterson in 1903. Hence there is no break in the chain of title from the sovereignty of the soil to the Young heirs.

It is true that the defendant in this suit was not a party to the Masterson-Harrington suit. But defendant is a mere intruder or naked trespasser on the land. As against him, this action might more properly have been brought as an action of forcible entry and detainer. See Alexander v. Gilliam, 39 Tex. 227, 228, 234, approved in Parker v. Fort Worth & D. C. Ry. Co., 71 Tex. 132, 8 S.W. 541. And while the judgment in the Masterson-Harrington case is not res adjudicata as to defendant, the doctrine of stare decisis renders the judgment binding with respect to what was there determined. "'According to the doctrine of the best cases, a title previously passed upon although in a suit between different parties, will not be again examined and adjudged in a case proceeding upon the same state of facts and presenting precisely the same question unless the same is manifestly erroneous. This, however, is not strictly upon the ground that the matter is res adjudicata, but rather upon those settled principles which induce the courts to abide by their own former decisions, that is, the rule of stare decisis.'" Benavides v. Garcia, Tex.Com.App., 290 S.W. 739, 741. The decision which was held to be stare decisis in the case just quoted from was one by a court of civil appeals to which the supreme court had refused an application for a writ of error. See also the case of State v. Franco-American Securities, Tex.Civ.App., 172 S.W.2d 731, writ refused for want of merit, for citations of authorities holding that where the boundary lines of an original survey have been determined in a law suit, and the supreme court acts with respect to said judgment, such location of said boundary lines becomes stare decisis.—It would be the duty of an attorney who examined the title for a prospective purchaser from one of the Young heirs, after the final determination in the Masterson-Harrington case, to advise him that the title into the Young heirs was a record title,—certainly the public policy that favors the settlement of land titles would not permit an intruder on the land to require such a purchaser to prove at

this late date, all over again, the aforesaid deed.

 It is defendant's contention, made for the first time on appeal, that, assuming W. S. Swilley had such an interest in the land as would support the action of trespass to try title, nevertheless plaintiffs failed to establish any right in themselves, after the death of W. S. Swilley, to prosecute the action, which action, of course, requires the right of possession to support it. This contention is untenable. The last paragraph of the will of W. S. Swilley expressly states that all property owned by him is community property, and that the provisions of the will shall be construed to apply only to his one-half community interest. Furthermore, during the trial the parties stipulated that W. S. Swilley had originally been a party plaintiff in the suit, but had died, leaving a will which had been duly probated, and that in the will he had named his widow as independent executrix, and that she had qualified as such, and that she and testator's three daughters— plaintiffs in the suit—were named as sole devisees of testator's property in the will. —If testator, in relying on the deed to his three daughters, which we have stated was void for fatally defective description, may have died intestate with respect to the undivided interest in the land, which he thought had been deeded to them, such fact would not prevent Mrs. Swilley, the owner of the other half of the community interest in the land, from exercising the right to sue in trespass to try title in her individual capacity, and as independent executrix. As such executrix, she had the right to the possession of the property in trust to dispose of according to law. R. C. S. Art. 3314. Nor do we know of any reason why, in the absence of any exception or plea in abatement by defendant, defendant can complain for the first time on appeal that the daughters, as heirs, were not entitled to sue prior to the expiration of four years after testator's death. See Youngs v. Youngs, Tex.Com.App., 26 S.W.2d 191; Pure Oil Company v. Tunnell, 126 Tex. 57, 86 S.W. 2d 207. Besides, plaintiffs pled the state of the probate proceedings.

 In any case, as against a naked trespasser, Mrs. Swilley, as executrix, and tenant in common, was entitled to the possession of the entire property sued for. See Croft v. Rains, 10 Tex. 520, 523; Watrous' Heirs v. McGrew, 16 Tex. 506, 510; Pilcher v. Kirk, 60 Tex. 162.

Since plaintiffs established that they owned the true title to at least the major portions of the undivided interests in each of the lots here involved, and since defendant is not claiming title under the Young heirs to whom the lots here involved were partitioned, but merely asserted squatter's rights under such circumstances as he conceived entitled him to the title under the ten year statute of limitations, Vernon's Ann.Civ.St. art. 5510, it is immaterial whether plaintiffs perfected a limitations title under the five year statute of limitations, Vernon's Ann.Civ.St. art. 5509. Neither was it necessary for plaintiffs to prove prior possession, so we will not examine the evidence with respect to the cutting of timber under the ownership of Garrett, who was W. S. Swilley's immediate grantor, etc. We likewise consider it unnecessary to further extend the length of this opinion to examine the evidence relative to whether the undisputed proof showed, as a matter of law, that defendant attorned to plaintiffs or their lessees for the same reason, that is, plaintiffs proved they owned the true title, or were tenants in common with the other owners of the true title, if there was any such title left outstanding.

 We have carefully examined defendant's contention that the undisputed evidence established that W. S. Webb entered into possession of a 441.6 acre tract in 1926, which included the 235 acre tract involved in this suit, and that Webb clearly marked out and defined the area claimed by him, and thereafter remained in exclusive possession and enjoyment thereof until he sold and conveyed same to defendant in 1931, when defendant went into possession thereof, and defendant with the help of certain of the witnesses built a fence which enclosed the aforesaid entire tract of 441.6 acres.—In considering defendant's personal testimony, it is to be borne in mind that he is a party to the suit. Nor did he include this property in the inventory of his separate and community

property which was sworn to by him in February, 1942, in the suit for divorce brought against him by his wife. Futhermore, plaintiffs produced evidence to the effect that the fences which defendant claimed to have built were not on the land at the time defendant claimed, nor within ten years next preceding the filing of the suit by plaintiffs. Indeed, plaintiffs adduced evidence which, if true, established that plaintiffs' tenants built the fences which defendant claimed to have erected. —In a word, without further elaboration, defendant's evidence failed to show affirmatively, and as a matter of law, that he had matured title to the land in question under the ten year statute of limitations.

■ Defendant urges that the following argument, made to the jury by plaintiffs' attorney in the closing argument, constituted reversible error, to-wit:

"I want to tell you gentlemen that this is an absolutely straight chain of title, if it were not, this court would not have submitted to you the issue of three year limitation, because that is the duty of the court to pass on, whether we have a title or not, and if we don't have a title or color of title, this court would never have submitted those two issues on title or color of title. Therefore, I say we have had our title examined by a very competent authority, the judge of this court, and he is now submitting to you, did we have three years possession under that title."

We have held that the court was right in holding that plaintiffs own the record title or true title to the land. And since the court should have held that plaintiffs showed themselves to be the owners of the true title, it was harmless error on the part of the court to permit the argument complained of. Besides it does not appear that defendant sought to have the jury instructed not to consider the argument. And it can hardly be seriously contended that the error was of such a character that an instruction by the court would not have cured it.

Thus far we have treated the argument as though defendant had properly reserved his bill of exception thereto. However, the court did not allow the bill of exception as tendered by defendant as his bill of exception No. 2. The bill as so tendered by defendant contained the matter just quoted above. The bill as so tendered also contained the following remarks made by plaintiffs' attorney in his closing arguments, to-wit:

"Whenever anyone wanted to lease that land, they leased it from Mr. Swilley, and when he takes a lease from the man Mr. Swilley had leased it to, and then tries to claim it by limitation, it borders on a violation of the (sic) Tenth Commandment, 'Thou shalt not steal'. When a man goes in and admits this is mine, this is my coat, and then because he wears it down the street and holds it for a few years and says, 'No, that is my coat', that is what he is doing. He borrowed my coat and is now trying to claim it. He leased the land and is now trying to steal it."

Indeed, the bill of exceptions as tendered by defendant contained plaintiffs' entire closing argument. The court qualified the bill to show:

That while Mr. W. P. Hamblen, Sr., was making his argument to the jury, Mr. Charles Spiner for the defendant approached the court from the rear of the bench and told the court that he "wanted to object to the argument of Mr. Hamblen", whereupon the court notified Mr. Spiner that "if he had any objections to make to the argument, which had been made or to the statements made by Mr. Hamblen in his argument to the jury, to interrupt Mr. Hamblen and to state his objections to the court in the presence of Mr. Hamblen and in the presence of the court and that the court would then pass upon it and make his ruling thereon, at which time Mr. Spiner stated he wanted his bill of exception, and the court told him he could have what bill of exception he could raise by the court reporter's records, that the court had no objection before it and nothing to pass on, at which time Mr. Spiner resumed his seat at the counsel table and made no further statement or objections to the court until after the retirement of the jury for deliberation, at which time he told the court he wanted a bill of exception, and the court again told him he

had his record that the court reporter made and he could take such bill as he was entitled to."

It is thus made clear that the court does disavow that defendant's attorney made any objection to any specific remarks made by plaintiffs' attorney in his closing argument, so far as the court was aware. Indeed, the court makes it clear that he declined to receive any auricular objection, but insisted that any objection which was urged before the court for a ruling be urged in open court so as to become a matter of record, and known to the adverse side. Defendant's counsel in effect declined to comply with the court's requirements by withdrawing to the counsel's table.

Thus, as we understand from the bill of exceptions as qualified by the court below, there was no record made there of any objection by defendant as to any specific portion of the argument. As we further understand from the bill as qualified either the court did not know to what portion of the argument the defendant intended to object, or the court declined to receive any objection privately made, and considered that no objection was made. In any case, it is to be inferred from the qualification that only one objection was made to the argument. And since the entire closing argument is set forth in the bill, and since the second matter complained of in the argument was necessarily spoken some minutes later or after the first matter was spoken, we must infer that defendant's attorney, in presenting same, is undertaking to act on the carte blanche which the court attempted to give him to raise any objection to anything spoken in the closing argument which he considered objectionable.

■ We need not dissert on the law with reference to proper arguments after the ruling made in Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054, and after the promulgation of Texas Rules of Civil Procedure, rule 269. Of course, the primary duty rested on the counsel addressing the jury not to have made an improper argument. When that counsel forgot his duty, or was blinded to it by partisan zeal and advocacy, the duty devolved on the court without any prompting from defendant's lawyer, to reprimand the speaker and to instruct the jury not to consider the remarks. Lastly, the duty devolved on defendant's counsel in case the court was inattentive, or failed to get the purport of the argument, to request the court to correct counsel.

■ As to the nature of the remarks complained of. It is, of course, not true that the acquisition of land by open, notorious adverse possession, etc., under the ten year statute of limitations borders on stealing the land so held. It is as lawful a manner of acquiring title to land as purchase. Here both parties pled the ten year statute of limitations, but, only the defendant adduced such evidence as entitled him to the submission of an issue thereon. We do not see why an instruction from the court to the jury not to consider such remarks would not have removed any prejudice which such remarks may have done defendant before the jury.—That defendant's counsel did not consider that the argument would necessarily destroy the validity of any verdict which might be returned by the jury appears to be indicated by the fact that, upon the retirement of the jury, he advised the court he wanted his bill. He did not then move for a mistrial on account of said remarks, but speculated on a favorable verdict, and moved for a mistrial only after an unfavorable verdict was returned.

We find that the points urged by defendant did not present any error which requires the reversal of the court's judgment.

Judgment affirmed.