**W. S. SWILLEY et al., Petitioners,**

**v.**

**Mrs. Norah McCAIN et al., Respondents.**

**No. A–8947.**

Supreme Court of Texas.

Jan. 15, 1964.

Rehearing Denied Feb. 19, 1964.

Hamblen & Hamblen, Fulbright, Crooker, Freeman, Bates & Jaworski, Austin C. Wilson and Uriel E. Dutton, Houston, for petitioners.

P. Harvey, John C. Randolph, Taylor J. Hughes, Able & Graham, Houston, for respondents.

WALKER, Justice.

This suit in trespass to try title was instituted by George Grozier, a person of unsound mind acting by his next friend, against W. S. Swilley. After the deaths of the original parties, their heirs and successors in title were substituted as plaintiffs and defendants. The property in controversy is an undivided $\frac{1}{48}$ interest in Lot No. 3, and an undivided $\frac{7}{24}$ interest in Lot No. 5, of the subdivision of the George Young tract located in the southwest portion of the Victor Blanco Grant in Harris County. Trial was to a jury, but the only issues submitted or requested dealt with defendants' claim of title by adverse possession. While these issues were answered in the negative, the trial court rendered judgment for defendants on the basis of its conclusion that the plaintiffs had failed to show title in themselves. The Court of Civil Appeals affirmed as to Lot No. 5, but reversed and rendered judgment for plaintiffs as to the interest claimed by them in Lot No. 3. 354 S.W.2d 588.

Lorenzo de Zavalla, Jr.,[1] acquired title to three leagues of the Victor Blanco Grant by conveyance from his father dated Sept. 8, 1835. Defendants have a regular chain of title emanating from H. Masterson, to whom Zavalla conveyed the three leagues in 1903. The record also shows a deed from Zavalla's mother, Emily Hand, to George Young dated January 15, 1854, conveying a tract of 2,000 acres out of the three leagues. The land now in controversy, as well as that involved in the earlier cases discussed below, is part of this 2,000-acre tract. Plaintiffs claim through and under George Young, but no conveyance from Zavalla to his mother has been found. Instead of attempting to obtain a jury finding that a deed was made by Zavalla to Emily Hand, plaintiffs relied upon the proceedings in two former suits involving different parts of the 2,000-acre tract and the position taken by defendants and their predecessors in title in one of such suits.

In 1865 the land conveyed by Emily Hand to George Young was partitioned by the heirs of the latter into nine tracts, one of which was set apart to the widow and one to each of the children. Jane Young, the mother of George Grozier, received Lot No. 5 in the division, and her younger brother Malcolm, received Lot No. 3. Malcolm later died without having been married, and Jane Young inherited from him an undivided $\frac{1}{14}$ interest in Lot No. 3. Jane married John Grozier and had four children: John, Robert, George and Hettie Ann. Upon her death each of the children inherited an undivided $\frac{1}{4}$ interest in Lot No. 5 and an undivided $\frac{1}{56}$ interest in Lot No. 3. One of the children, John, then died without issue, and his interest in the two lots passed one-half to his widow and one-half, jointly, to his sister and two brothers. If the George Young title is superior to that acquired by H. Masterson through his conveyance from Zavalla, George Grozier thus became vested with an undivided $\frac{7}{24}$ interest in Lot No.

5 and an undivided $\frac{1}{48}$ interest in Lot No. 3. These are the interests which plaintiffs seek to recover in the present suit.

In 1905 H. Masterson instituted an action in trespass to try title against the heirs of George Young in the District Court of Harris County to recover the land set apart to the children in the partition mentioned above. George Grozier was named as one of the defendants in the original petition, but the cause was severed as to him and several of the other heirs. The main case was then tried before a jury, which found that "there was a deed made to 2,000 acres of the Victor Blanco Grant by Lorenzo de Zavalla, Jr. to Emily Hand." Judgment was rendered on the verdict in favor of the heirs who were parties to that cause, and Masterson appealed. The Court of Civil Appeals affirmed the judgment of the trial court, holding that the jury finding was supported by the evidence. Masterson v. Harrington, Tex.Civ.App., 145 S.W. 626 (wr. ref.). This is the first case upon which plaintiffs rely. The severed cause against George Grozier, who was then a person of unsound mind, was settled by his guardian ad litem. Under the terms of the settlement, $150.00 was paid by Masterson for George Grozier's interest in Lot No. 5. Judgment was entered approving the settlement, and decreeing that Masterson recover title and possession of such tract. Lot No. 3 is not mentioned in the judgment.

Masterson's title was subsequently acquired by W. S. Swilley, under whom defendants claim. In 1946 Swilley, his wife and three daughters brought an action in trespass to try title against W. H. Wagers in the District Court of Harris County to recover 235.36 acres out of Lots Nos. 4 to 8, inclusive. After the death of W. S. Swilley, the suit was prosecuted by his executrix and the other original plaintiffs. Wagers was a naked trespasser. In response to his demand, the Swilleys filed an abstract of

---

1. Although his name also appears in the record as Lorenzo de Zavala, Jr., he is referred to herein as Zavalla because that is the spelling used in Masterson v. Harrington, Tex.Civ.App., 145 S.W. 626 (wr. ref.).

the title upon which they relied, listing therein: (1) the instruments showing title in Zavalla; (2) the 1903 conveyance by Zavalla to Masterson; (3) the chain of conveyances by which W. S. Swilley acquired title from Masterson; (4) the 1854 conveyance by Emily Hand to George Young; (5) the presumption of a deed from Zavalla to Emily Hand predating her deed to George Young and conveying the land therein described; (6) the proceedings in the Masterson case; and (7) prior possession and the statutes of limitation. The district judge concluded from the evidence introduced that the Swilleys had established record title in themselves, and the jury found in their favor under the three and five year statutes of limitation. Judgment was accordingly rendered for the Swilleys. The Court of Civil Appeals affirmed, holding *inter alia* that under the rule of stare decisis the superiority of the George Young title was established by the decision in the Masterson case. Wagers v. Swilley, Tex. Civ.App., 220 S.W.2d 673 (wr. ref. n. r. e.). This is the second case upon which plaintiffs now rely.

The Court of Civil Appeals held in the present case that the compromise judgment in the severed cause against George Grozier effectively divested the latter, at least as against collateral attack, of any interest in Lot No. 5. It further concluded: (1) that under the doctrine of stare decisis, the judgments in the Masterson and Wagers cases are available to plaintiffs as muniments of title; and (2) that since the Swilleys had successfully asserted the presumption of a deed from Zavalla to Emily Hand in the Wagers case, they are now estopped to take a contrary position to the prejudice of the plaintiffs. Plaintiffs also say that the contentions made by the Swilleys in the Wagers case, the judgment in that proceeding, and the judgment in the Masterson case constitute admissions against interest. They contend that a deed from Zavalla to his mother has been proven thereby as a matter of law, just as it would be by an unimpeached recital in a subsequent conveyance executed by Zavalla. See Bennett v. Romos, 151 Tex. 511, 252 S.W.2d 442.

■ The judgments in the two earlier cases are not available to plaintiffs as muniments of title in the ordinary sense, because they were not parties to either of those proceedings and do not claim under anyone who was. We assume without deciding that in view of the position taken by the Swilleys in the Wagers case, the judgments, jury verdicts and other papers filed in both of the former suits were properly received in evidence as admissions against interest. See Campbell v. McLaughlin, Tex.Com. App., 280 S.W. 189. Such proceedings do not, however, conclusively prove that in fact a deed was executed and delivered by Zavalla to Emily Hand prior to his conveyance to H. Masterson. Reliance on the presumption of a lost deed and the successful assertion of the proposition that a prior decision is stare decisis of that issue may bind a party under principles of res judicata, estoppel or stare decisis, but cannot be regarded as having the same probative force as a recital of fact in a subsequent instrument executed by the grantor.

■ It is necessary at this point to notice two differences between the doctrine of res judicata and the rule of stare decisis. After a question of law or an issue of fact has been litigated and adjudicated in a court of competent jurisdiction, the same matter cannot be relitigated in a subsequent suit between the same parties or those in privity with them. This is by virtue of the doctrine of res judicata, which thus extends to both questions of law and issues of fact but binds only the parties to the first suit and those who claim under them. It may not be invoked by one who is not bound by the judgment in the earlier proceeding. See Kirby Lumber Corp. v. Southern Lumber Co., 145 Tex. 151, 196 S.W.2d 387, 169 A.L.R. 174; Read v. Allen, 56 Tex. 182; 30A Am.Jur. Judgments § 324 et seq. The judgments in the Masterson and Wagers cases are not res judicata here, because plaintiffs were not parties to either of those

suits and do not claim under anyone who was.

■ As originally conceived and as generally applied, the doctrine of stare decisis governs only the determination of questions of law and its observance does not depend upon identity of parties. After a principle, rule or proposition of law has been squarely decided by the Supreme Court, or the highest court of the State having jurisdiction of the particular case, the decision is accepted as a binding precedent by the same court or other courts of lower rank when the very point is again presented in a subsequent suit between different parties. As a general rule the determination of a disputed issue of fact is not conclusive, under the doctrine of stare decisis, when the same issue later arises in another case between persons who are strangers to the record in the first suit.

■ Expressions by some of our Courts of Civil Appeals suggest that an adjudication of the location of a boundary line will control the location of the same line in a subsequent suit between different parties even though the first case turned upon an issue of fact or the questions of law involved in the later litigation are not the same. See Patterson v. Peel, Tex.Civ. App., 149 S.W.2d 284 (wr. ref.); Cockrell v. Work, Tex.Civ.App., 94 S.W.2d 784 (wr. dis.); McDonald v. Humble Oil & Refining Co., Tex.Civ.App., 78 S.W.2d 1068 (wr. dis.); Porter v. State, Tex.Civ.App., 15 S. W.2d 191 (no writ). Another intermediate court has refused to disregard orthodox limitations on the doctrine of stare decisis even in boundary cases. See Dunn v. Land, Tex.Civ.App., 193 S.W. 698 (no writ); Horne v. Moody, Tex.Civ.App., 146 S.W.2d 505 (wr. dis. judg. cor.). See also Hodges, Stare Decisis in Boundary Disputes: Let There Be Light, 21 Tex.Law Rev. 241. No light can be thrown on that problem here, but it is our opinion that a decision upholding a jury finding that a missing deed was executed and delivered as against the contention that such finding had no support in the evidence is not stare decisis in a subsequent suit between different parties of the fact so found by the jury in the first case.

The principle of stare decisis does not make the Masterson case conclusive as to the superiority of the George Young title in the present suit. Plaintiffs say that they have not contended that it is, but they do insist that the holding of the Wagers case as to the effect of the Masterson decision is stare decisis. We do not agree. The conclusion reached by the intermediate court on that question in the Wagers case was unsound, and we did not unqualifiedly approve all of law declared in its opinion. See Rule 483, Texas Rules of Civil Procedure. A review of the application for writ of error discloses, moreover, that approval of the stare decisis holding was not necessarily involved in our denial of the writ of error. The holding of the intermediate court as to the effect of the Masterson decision is not, therefore, binding upon either defendants or this Court under the doctrine of stare decisis. See Conley v. Abrams, Tex.Civ.App., 7 S.W.2d 674 (wr. ref.); 14 Am.Jur. Courts § 74; 21 C.J.S. Courts § 198.

■ Defendants are not estopped to deny the superiority of the Goerge Young title. Ordinary equitable or quasi-estoppel may preclude a party from asserting a right inconsistent with his unsworn allegations or admissions in a former action, but such estoppel arises only in favor of the parties to the first suit and those in privity with them. Smith v. Chipley, 118 Tex. 415, 16 S.W.2d 269; Railroad Commission v. Arkansas Fuel Oil Co., Tex.Civ.App., 148 S.W.2d 895 (wr. ref.); American Surety Co. of New York v. Martinez, Tex.Civ.App., 73 S.W. 2d 109 (wr. ref.); Blackburn v. Blackburn, Tex.Civ.App., 163 S.W.2d 251 (no writ); 31 C.J.S. Estoppel § 121; 19 Am.Jur. Estoppel § 72 et seq. Judicial estoppel, which may be invoked by strangers to the record in the former proceeding, rests upon statements made under oath in the course of

such action. See Long v. Knox, 155 Tex. 581, 291 S.W.2d 292.

■■■ In Texas the presumption of a grant which arises from long possession and enjoyment of property coupled with other corroborating circumstances is one of fact, and as a general rule the trier of fact must determine whether the inference of a grant or conveyance is warranted by the evidence. Herndon v. Vick, 89 Tex. 469, 35 S.W. 141. See also Masterson v. Harrington, supra; Carlisle v. Gibbs, 44 Tex.Civ.App. 592, 98 S.W. 192 (no writ). The present record contains very little evidence of the type usually offered in support of the presumption, and certainly does not show as a matter of law that Zavalla made a deed to his mother before the conveyance to H. Masterson. Since no jury finding on that issue was obtained or requested and the superiority of the Emily Hand title is not conclusively established by the proceedings in the Masterson and Wagers cases, the trial court properly rendered judgment for the defendants. We do not reach the question decided by the Court of Civil Appeals with reference to the effect of the compromise judgment in the severed cause against George Grozier.

The judgment of the Court of Civil Appeals is reversed, and that of the trial court is affirmed.

GRIFFIN and SMITH, JJ., dissenting.

SMITH, Justice (dissenting).

I respectfully dissent. Since it is my view that the plaintiffs, Mrs. Norah McCain et al., established title and were entitled to judgment awarding them title to both Lot 3 and Lot 5, this dissent is written in the light of the points of error presented in plaintiffs' application for writ of error as well as the points upon which Swilley's application was granted. I think a discussion of plaintiffs' points will point up the soundness of my position in regard to the question upon which this court has rested its decision, and at the same time present plain-

tiffs' position that the judgment in the severed portion of Cause No. 35,613, Masterson v. McDonald et al., dated February 16, 1911, was void. This dissent will be devoted to two basic propositions. One, that George Grozier, who was an original party defendant in the Masterson v. McDonald suit, and who was an original party plaintiff in the present suit, and his heirs, the present plaintiffs, are not to be denied their title to Lots 3 and 5 because of the rule announced in Kirby Lumber Corp. v. Southern Lumber Co., 145 Tex. 151, 196 S.W.2d 387, 169 A.L.R. 174. That case simply has no application to the present case. It will be demonstrated further in this opinion that the severance of George Grozier's cause of action from the original suit in Masterson v. McDonald, supra, did not change his status as a party plaintiff. Therefore, in my opinion, the Court is in error in concluding that the plaintiffs do not claim under anyone who was a party to the original Masterson suit. The Kirby case has no controlling effect for the further reason: that case involved the finding of a jury on a fact question involving limitations contained in a trial court judgment, and not a matter of law determined by an appellate court. Therefore, the trial court judgment was not a muniment of title. Whereas, by the Swilleys' own admissions, George Grozier had an interest in the land involved in Masterson v. McDonald, supra, in the subsequent suit of Wagers v. Swilley, Tex.Civ.App., 220 S.W.2d 673, wr. ref. n. r. e., which was the same land of which Lots 3 and 5 involved in this suit is a part. This leads to my second position, which is, that while the Masterson case, on the question of the lost deed may not by itself be stare decisis, yet the judgment in Wagers v. Swilley, supra, construing the Masterson judgment and its effect, was stare decisis, the same as the construction of a will or any other instruments would have been, and the holding in Wagers that the lost deed had been established as a matter of law and that Masterson had no title to the land involved except the Young title, was stare decisis and binding on all parties. The holding in Wagers

that there was a lost deed as a matter of law and the Court's construction in Wagers of the effect of the judgment in Masterson, under which the Swilleys claimed, was admissible as admissions against interest and the Swilleys, therefore, under this theory are judicially estopped to deny the holdings in Swilley v. Wagers, supra. This is true for the reason that as plaintiffs in the Wagers suit, the Swilleys filed an abstract of title among other things stating that "they claimed the property by virtue of the presumed deed from Lorenzo de Zavalla to Emily Hand, predating the deed from Emily Hand to George Young dated January 15, 1854." The Swilleys further asserted in Wagers that they claimed the land by virtue of:

"15. Deed from E. D. Hand and wife, Emily Hand, to George Young, dated January 15, 1854, recorded in Volume V, page 271 of the Deed Records of Harris County, Texas

"16. Presumption of a deed from Lorenzo de Zavalla, Jr. to Emily Hand, predating the instrument described in Item 15, conveying the same property therein described."

Admissions in favor of the presumed grant from Lorenzo de Zavalla, Jr., to Emily Hand were contained in the abstract of title, wherein it was stated by the Swilleys that the instruments that they listed were "abstract of their title to the land involved in this suit." The Swilleys listed in the abstract of title the proceedings in the Masterson case and the judgment therein together with the mandate of the Court of Civil Appeals. This demonstrates that the Swilleys affirmatively claimed title to the land sued for through the Masterson judgment. That judgment recited that there was a missing deed which had transferred the property from Lorenzo de Zavalla, Jr., to the next predecessor in Swilleys' chain of title, Emily Hand. The opinion affirming the Masterson case was also introduced in evidence by the Swilleys as a muniment of title. The Swilleys were successful in

having the Court hold with them on the sole points that there was a lost deed from Lorenzo de Zavalla, Jr., to Emily Hand covering the property involved herein, and that the Masterson case (which divested H. Masterson of any claim to the de Zavalla Title, except through the Young heirs) was a muniment of title. These admissions, coupled with others, in their chain of title, and in open court by their (Swilleys') attorney, unimpeached, established the lost deed and the superiority of the Young heirs' title as a matter of law, especially since prior possession and all other circumstances supported the presumption of the lost deed in George Young, a common source. Under this record, the McCains were entitled to rely upon and did establish a lost deed from Lorenzo de Zavalla to Emily Hand. Under the doctrine of judicial estoppel, the Swilleys are judicially estopped, having taken the position above outlined, and the Court having rendered judgment upholding such position. They are bound by judicial estoppel as a matter of law. See Long v. Knox, 155 Tex. 581, 291 S.W.2d 292. In the Long case, this court quoted with approval the rule announced in 31 C.J.S. Estoppel § 121, p. 390, that:

"Under the doctrine of judicial estoppel, as distinguished from equitable estoppel by inconsistency, a party is estopped merely by the fact of having alleged or admitted in his pleadings in a former proceeding under oath the contrary of the assertion sought to be made."

Such rule is equally applicable to the present case. In support of the rule in C.J.S., supra, this court in Long cited the cases of Grier v. Canada, 119 Tenn. 17, 107 S.W. 970; Sartain v. Dixie Coal & Iron Co., 150 Tenn. 633, 266 S.W. 313. It was also held that it was not necessary that the party invoking the doctrine of judicial estoppel should have been a party to the former proceedings, citing Hatten Realty Co. v. Baylies, 42 Wyo. 69, 290 P. 561, 72 A.L.R. 587; Corder v. G. B. Sprouse & Co., 20 Tenn. App. 486, 100 S.W.2d 1001.

The holding in the case of Wagers v. Swilley, supra, that Lorenzo de Zavalla, Jr., had conveyed the title to 2,000 acres to Emily Hand, George Young's Grantor, before 1854, and that Masterson v. Harrington, supra, was a muniment of title, and, therefore, there was no break in the title, is stare decisis. All material contentions here presented by the Swilleys were concluded against them in the Wagers case. The holding in Wagers was necessarily approved even though this court refused the application in Swilley v. Wagers, with the notation "writ refused, n. r. e." That this is true is well stated by the McCains in their Counter Point Two:

"Since the only matters decided by the Court of Civil Appeals in Wagers v. Swilley (supra) was on the same set of facts as were presented in the case at bar, and it based its decision solely on its holding, that there was: (1) a lost deed from Zavalla, Jr., to Emily Hand, as a matter of law, as claimed by the Swilleys; and (2) That the judgment in Masterson v. Harrington (supra) (in which it was found there was such a lost deed to the property involved herein) was a muniment of title, as claimed by the Swilleys; and (3) The Court expressly refused to pass on or consider as material the points of Swilleys on the finding of adverse possession; the 'Refusal of Writ of Error by the Supreme Court No Reversible Error' could only mean that the Supreme Court approved the judgment on those grounds, and the case is available to Plaintiffs as stare decisis or estoppel by judgment, and admissions against interest. The Court of Civil Appeals did not base its decision or specifically find that the case of Masterson v. Harrington was stare decisis. It simply found that it was a muniment of title which the Petitioners claimed under and which contained the admission of the lost deed; along with the decision of Wagers v. Swilley that established the title through the Young heirs by stare decisis."

The chains of title and the facts which were introduced in the present case are substantially the same as the facts that are recited to have existed in the decisions of Masterson v. Harrington, supra, and in Wagers v. Swilley, supra. The trial court erred in failing to admit in evidence the opinions of the Court of Civil Appeals because of recitals against interest and for the further reason that they were decisions on the law and title of the very land and facts involved herein. It would be a great injustice to hold that this court did not approve the basic holding in Wagers merely because we refused the writ, n. r. e., or because the refusal of the writ in the Masterson case in 1912 did not have the same meaning as the notation "refused" has today. Clearly, the rule that where the Supreme Court has decided certain questions relative to certain property, such decisions become stare decisis as to such questions, when raised in a subsequent action between different parties on the same facts, and respecting the same property, should be applied in this case. I would apply this rule, which has support in the following authorities:

State v. Franco-Amer. Sec., Tex.Civ. App., 172 S.W.2d 731, wr. ref. want of merit; O'Rourke v. Clopper, 22 Tex.Civ. App. 377, 54 S.W. 930, wr. ref.; Benavides v. Garcia, Tex.Com.App., 290 S.W. 739; Noland v. Weems, Tex.Civ.App., 141 S.W. 1031, wr. dis'm.; Cockrell v. Work, Tex. Civ.App., 94 S.W.2d 784, 795, wr. dis'm.; Hennegan v. Nona Mills, Tex.Civ.App., 195 S.W. 664, (1917), wr. ref.; Blaffer v. State, Tex.Civ.App., (1930), 31 S.W.2d 172, 190; Case-Pomeroy Oil Corp. v. Pure Oil Company, Tex.Civ.App. (1955), 279 S.W.2d 886, wr. ref.; W. T. Carter & Bro. v. Rhoden, Tex.Civ.App., 72 S.W.2d 620, wr. dis'm.; Allen v. West Lbr. Co., Tex. Com.App., 244 S.W. 499; Hermann v. Allen, 103 Tex. 382, 128 S.W. 115, (1910).

The Blaffer case, supra, quotes from Porter v. State, Tex.Civ.App., 15 S.W.2d 191, the rule that "though the parties to and lands involved in two actions are different, yet the same original surveys, boundary lines, and acts of the same surveyors, which determine the second action, having been involved in the other prior action, the determination of those matters by the highest court of the state in the prior action are binding and conclusive in the subsequent action, not as res judicata, but under the doctrine of stare decisis." I recognize that this rule of stare decisis only applies to the decisions of the Supreme Court, yet I think it applies here. Our refusal, n. r. e., in the Wagers case amounts to a decision of this court. I feel quite certain that had this court disagreed with the basic holdings in the Wagers case, it would have been compelled to grant the writ. This court actually "refused" the writ in the Masterson case. The law questions involved in this latter case and on these questions, if presented today, the writ, no doubt, would be "refused." It would be drawing a rather fine technical line to hold otherwise.

Since the McCains have the superior title to the land involved, they are entitled to recover against the Swilleys.

The defendants, Swilleys, claim title to Lot 5 under a final judgment, dated February 16, 1911. This is the same judgment referred to earlier in this opinion. The judgment is void and cannot support the Swilleys' claim to title. My position that the judgment is subject to collateral attack is based on the rule announced in 49 C.J.S. p. 824, infra.

The McCains, as plaintiffs, proved their inheritance of a 7⁄24ths interest in Tract No. 5 of the George Young Subdivision in the Victor Blanco Survey in Harris County, Texas. The Swilleys, in defense, offered and relied upon this judgment of February 16, 1911, entered in the severed part of the original cause No. 35,613, styled Masterson v. McDonald et al. The other part of this same cause went up on appeal as Masterson

v. Harrington, Tex.Civ.App., 145 S.W. 626, wr. ref. In that case the Court of Civil Appeals held that George Grozier's relatives (heirs of George Young the same as he was an heir of George Young) had record title to the other undivided interest in the tracts which they had inherited through the same source as George Grozier inherited his undivided interest from George Young.

George Grozier was a defendant in the original Masterson suit. Masterson, the plaintiff, alleged in his petition that George Grozier was a lunatic and was confined in a state insane asylum. He had no regularly appointed guardian. The Court appointed A. R. Hamblen, a lawyer, as guardian to "defend the suit." Mr. Hamblen filed a plea of "not guilty" on behalf of the lunatic, George Grozier. Mr. Hamblen also filed a similar answer on behalf of other defendants.

The record reflects that Masterson v. McDonald was a jury case. However, from the wording of the judgment of February 16, 1911, it appears that some form of severance had taken place and the jury relieved of its duties.

When Mr. Hamblen filed the plea of "not guilty" on behalf of the lunatic, George Grozier, the plaintiff's title to all the land, tracts one through eight, was put in issue. As to George Grozier, the plaintiffs neither tried the title question, nor did they dismiss as to him. The title question was tried after the so-called severance, but the judgment in the main suit did not dispose of the George Grozier alleged interest in the title. The judgment entered was adverse to Masterson, the plaintiff. That judgment, as heretofore indicated, was affirmed in Masterson v. Harrington, supra, and writ of error was refused by this court. On February 16, 1911, just eleven days after the judgment was entered against Masterson, a judgment was entered in favor of Masterson against George Grozier, but Masterson did not recover the title. This severed portion of the case was tried before the same judge who presided in the main suit.

George Grozier was in Court to defend his title to land and the only issue to be tried was the title question. The judgment shows on its face that it is void because the Court after finding that George Grozier had an interest in the land, proceeded to approve a settlement or compromise wherein Masterson paid $150.00. In that manner, Masterson attempted to divest George Grozier, the lunatic, of his title. The judgment shows on its face a transaction of business in the District Court affecting a lunatic's property rights, whereas, the exclusive jurisdiction was vested in the County Court. Mr. Hamblen was appointed by the Court to defend the suit. From the recitations in the judgment, the Court did not find that Masterson had discharged his burden of establishing a superior title as against George Grozier, but to the contrary, the Court and Masterson recognized that an interest in the title was vested in George Grozier. George was not in Court to agree to or resist a sale of his inheritance.

I have no quarrel with the law relied upon by the Court of Civil Appeals, but say that the quotation from 44 C.J.S. Insane Persons § 151, p. 329, has no application here.

49 C.J.S. Judgments § 421, p. 824, which reads:

"A judgment is subject to collateral attack where the want of jurisdiction is with respect to the subject matter, or where, although the court has jurisdiction of the parties and the subject matter, the judgment is void for want of jurisdiction with respect to the power of the court to render the particular judgment or decree, as where the court, in entertaining jurisdiction and rendering judgment in a particular case, exceeds the powers conferred on it by constitutional or statutory provisions."

does have direct application to the present case. See Messner v. Giddings, 65 Tex. 301; Ex parte Hughes, 133 Tex. 505, 129 S.W.2d 270.

There is no law which authorizes a district judge, with or without the assistance of a guardian ad litem, to traffic in the land of a lunatic defendant in a trespass to try title suit pending in his court. The issue as to title in this case should have been tried by the Court just as it was in the main suit. Had that been done, there can be no doubt but that the same judge under the identical title facts would have entered a judgment against Masterson. When Masterson made his offer of compromise and when the judge turned aside from the trial of title to consider the amount of money offered for the lunatic's inheritance, the Court ceased to have any authority or jurisdiction to proceed. The Court had only the authority to try the title suit. Furthermore, the guardian ad litem had no authority to accept the compromise or to act as he did. See Wright v. Jones, Tex.Com.App., 52 S.W.2d 247.

There has been no trial of the title suit as between Masterson and George Grozier, an original defendant in the main suit. Article I, Section 19 of our Constitution, Vernon's Ann.St. provides that:

"No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land."

George Grozier either owned the land or he did not. He either wins or loses the title suit on the proof made. The fact that the plaintiff, Masterson, was willing to pay money for George Grozier's title does not alter the law. In a title suit, if the parties are sui juris, then they can halt the proceedings and enter into agreements and the judge can approve such agreements, but where a defendent is a lunatic represented by a guardian ad litem, no such agreement can be made that will deprive the lunatic of his title to land in consideration of the payment of money. Ex parte Hughes, supra; Brown v. Wood, Tex.Civ.App., 239 S.W.2d 195, wr. ref.; Crier v. Cowden, Tex.Civ. App., 251 S.W. 822, wr. ref.

For the reasons stated, the judgment of the trial court should be reversed and judgment here rendered for the McCains.

GRIFFIN, Justice (dissenting).

I agree with the holding of the Court of Civil Appeals in this case. The Swilleys, having relied on the Masterson judgment in the Wagers case and having obtained a judgment based on such reliance, they cannot now take a position contrary to the one on which they prevailed.